**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

WILLIAM SCOTT CARMODY,

        Plaintiff,

v.                                        Case No. 6:14-cv-830-Orl-37KRS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

**ORDER**

This cause is before the Court on the following:

(1)    *Daubert* Motion to Limit Expert Testimony of Robert Masson, M.D. (Doc. 76), filed May 15, 2015; and

(2)    Plaintiff's Opposition and Response to Defendant's *Daubert* Motion (Doc. 78), filed May 29, 2015.

**BACKGROUND**

Plaintiff William Scott Carmody is Defendant State Farm Mutual Automobile Insurance Company's insured under Automobile Insurance Policy 028708159E ("**Policy**"), which includes coverage for uninsured motorist insurance benefits ("**UM Benefits**"). (*See* Doc. 2, ¶ 6; Doc. 1-1, p. 13; *see also* Doc. 7, ¶¶ 6, 11–12.) On **September 22, 2011**, Jennifer R. Vause ("**UM Motorist**") negligently "rear-ended" the vehicle occupied by Plaintiff ("**2011 Accident**"). Contending that the 2011 Accident caused him permanent injuries, and the UM Motorist would likely be unable "to fully compensate" Plaintiff for his losses, Plaintiff demanded UM Benefits under the Policy. (*See* Doc. 2, ¶¶ 2–4, 7–8.) Defendant failed to pay Plaintiff UM Benefits as requested,

which Plaintiff claims is a breach of the Policy (*see id.* ¶¶ 9–10). Defendant admits that the Policy provides coverage for the Accident; however, it denies that Plaintiff sustained injuries or damages from the Accident sufficient to trigger an entitlement to UM Benefits. (*See* Doc. 7, ¶¶ 6, 8–9, 11–12.)

On September 10, 2014, the Court entered its Case Management and Scheduling Order ("**CMSO**") requiring—among other things—that Plaintiff and Defendant submit their Disclosure of Expert Reports by December 19, 2014, and January 20, 2015, respectively. (Doc. 18, p. 14.) Thereafter, contentious discovery ensued which required repeated Court intervention. (*See* Doc. 25, 28, 30, 33, 34, 37, 39, 47, 56, 62, 65, 73, 75.) Pertinent to the matters presently before the Court, the Court entered Orders sanctioning Plaintiff for his untimely and insufficient expert witness disclosures by precluding Plaintiff's reliance on the testimony of certain medical professionals and also limiting the testimony of Plaintiff's remaining "treating" physicians—Richard Smith, M.D. ("**Dr. Smith**") and Robert Masson, M.D. ("**Dr. Masson**")—to "opinions formed based on observations made during the course of [Plaintiff's] treatment." (*See* Doc. 62, p. 10; *see also* Doc. 75 (rejecting Plaintiff's objections and adopting and affirming Order imposing sanctions).)

On March 20, 2015, Plaintiff disclosed that Dr. Masson "will testify that the [2011 Accident] caused the onset of [Plaintiff's] symptoms and aggravation of a pre-existing lumbar condition" and "about how the [A]ccident-related injuries have impacted the life of Plaintiff." (*See* Doc. 53, p. 4.) Further, Dr. Masson will "provide *expert testimony* that the injuries caused by [the Accident] to the Plaintiff are permanent, and require future medical care." (*Id.* (emphasis added).) After deposing Dr. Masson, Defendant filed a motion requesting entry of an Order prohibiting Dr. Masson from offering expert

testimony as to the cause of Plaintiff's injuries. (*See* Doc. 76 ("**Daubert Motion**").) Plaintiff filed his response. (Doc. 78.) The action is set to be tried before a jury during the trial term commencing **November 2, 2015** (Doc. 18), and the *Daubert* Motion is now ripe for adjudication.[1]

## LEGAL STANDARDS

Before allowing a party to present the opinion testimony of an expert witness at a jury trial, courts must act as a "gatekeeper" by making a preliminary determination that the requirements of Federal Rule of Evidence 702 are satisfied. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993); *see also* Fed. R. Evid. 104(a). Rule 702 provides that a witness with the requisite "knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if: (a) the witness possesses "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact at issue; (b) "the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." These requirements help ensure that any expert testimony presented at a jury trial is relevant, reliable, and supported on "good grounds." *See Daubert*, 509 U.S. at 589–90. Further, under *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999), the court must ensure that expert witnesses present "in the courtroom the same level of intellectual rigor that characterizes the practice of the expert in the field."

The U.S. Court of Appeals for the Eleventh Circuit has identified three questions that the district court should consider before allowing expert testimony. *See City of*

---

[1] The Court set the matter for a hearing (Doc. 80), but the Court cancelled the hearing based on the parties' representations that neither would present evidence at the hearing (Doc. 81).

3

*Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). First—qualification—is the expert qualified to testify competently regarding the matters he intends to address? *Id.* Second—reliability—is the methodology by which the expert reaches his conclusions sufficiently reliable? *Id.* Third—helpfulness—does the testimony assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.? *Id.* The party presenting the expert witness must establish by a preponderance of the evidence that all three of these questions are answered in the affirmative. *See id.*; *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010).

The court's reliability assessment must focus "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Such focus is aided by consideration of a non-exhaustive list of factors, including any known or potential rate of error, whether the methodology is generally accepted in the expert's field, and whether it has been subjected to peer review, publication, or testing. *See id.* at 593–94. If the "methodology" is no more than the expert's own *ipse dixit*, then the court should not permit the opinion testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (directing courts to exclude expert witness testimony when there is "simply too great an analytical gap between the data and the opinion proffered").

## DISCUSSION

Dr. Masson is an experienced and decorated physician in the field of Neurosurgery, and Defendant does not challenge his qualifications. (*See* Doc. 76; *see also* Doc. 78, pp. 21–29.) Rather, Defendant challenges the reliability of Dr. Masson's opinion that Plaintiff's physical injuries and problems were caused by the 2011 Accident.

(*See* Doc. 76.) Defendant argues that these opinions are unreliable because: (1) Dr. Mason lacks "a proper foundation, *i.e.* sufficient facts and data" for his causation opinion; (2) Dr. Mason based his causation opinion solely on the patient history relayed by Plaintiff rather than a methodology founded on scientific methods or techniques; and (3) Dr. Mason failed to exclude other possible causes of Plaintiff's injuries. (*Id.* at 3, 6, 8, 12.) Plaintiff counters that Dr. Masson's causation opinions are sufficiently reliable because they are based on the "traditional medical concept of subjective, objective (physical exam), assessment and prognosis" (SOAP method).[2] (*See* Doc. 78, p. 13.)

Dr. Masson testified that he examined Plaintiff only one time—after this action was filed and almost four years after the 2011 Accident. (Doc. 76, p. 15.) Aside from an MRI study—done on a date unknown to Dr. Masson—he did not review Plaintiff's prior medical reports or medical history, and he did not communicate with Plaintiff's prior doctors or therapists before making his causation opinion. (*See id.* at 16–17.) Rather, Dr. Masson relied on the history provided to him by Plaintiff, which reflected a close temporal proximity between the 2011 Accident and onset of his injuries and omitted information about prior injuries Plaintiff sustained in train and automobile accidents before the 2011 Accident.[3] (*Id.* at 18–19, 24 (admitting that he did not know of or consider prior accidents).)

---

[2] The Court is not persuaded by Plaintiff's argument concerning SOAP. SOAP may be a generally accepted methodology for certain medical treatment purposes—such as forming a diagnosis or treatment plan—but it is not a generally accepted methodology for determining the *cause* of a medical problem. Further, Plaintiff has not shown that, when used to determine causation, SOAP has a known error rate, is subject to testing, or has been subject to peer review.

[3] Dr. Masson testified that the injuries he found during his physical examination of Plaintiff were "consistent with the story the patient gave [him]." (Doc. 76, p. 25.)

Courts frequently exclude causation opinion testimony from expert witnesses who—like Dr. Masson—base their opinions on a plaintiff's account of the facts without consideration of other possible causes of an injury. *See Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1336 (11th Cir. 2010); *Hendrix ex rel. G.P. v. Enenflo Co.*, Inc. 609 F.3d 1183, 1195 (11th Cir. 2010) (holding that the expert must not only rule out other possible causes to get to the final suspected cause, but also make sure the final cause is derived from a scientific methodology); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005); *see also Cooper v. Marten Transport, Ltd*, 539 F. App'x 963 (11th Cir. 2013);[4] *see Bowers v. Norfolk S. Corp.*, 537F.Supp.2d 1343, 1366 (M.D. Ga. 2007) (rejecting causation opinion of physician which was based on an incomplete medical history). Based on this law, and a careful review of the record—particularly Dr. Masson's deposition—the Court finds that Plaintiff has not established by a preponderance of the evidence that Dr. Masson's subjective causation opinion is based on sufficient facts and data nor that it is the product of a reliable methodology.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the *Daubert* Motion to Limit Expert Testimony of Robert Masson, M.D. (Doc. 76) is **GRANTED**.

---

[4] The district court in *Cooper* precluded two physicians—Drs. Pollydore and Kelly—from offering expert opinions concerning the cause of a plaintiff's spinal injuries. *Cooper*, 539 F. App'x at 967. Drs. Pollydore and Kelly were the *Cooper* plaintiff's treating physician and surgeon, and the district court determined that their causation opinions were not reliable because they were based only on physical examinations of the *Cooper* plaintiff and a review of his medical history in relation to the subject accident. *See id.* at 966–67. The Eleventh Circuit agreed with the exclusion ruling because the methodology employed by Drs. Pollydore and Kelly amounted to "simple reliance on a temporal relationship" without considering and excluding alternative causes. *Id.* (rejecting plaintiff's characterization of his experts' methodology as properly founded on "basic physics principles and the effects of force on the spine").

**DONE AND ORDERED** in Chambers in Orlando, Florida, on September 18, 2015.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record